**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

HERMENEGILDO NEVAREZ CAMPA,

        Petitioner,

v.                               Case No.: 3:17-cv-1264-J-32JBT
                                     3:15-cr-53-J-32JBT

UNITED STATES OF AMERICA,

        Respondent.

_____

## ORDER

This case is before the Court on Petitioner Hermenegildo Nevarez Campa's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. (Civ. Doc. 1).[1] Petitioner pleaded guilty to one count of child sex trafficking, in violation of 18 U.S.C. § 1591. He challenges his conviction and sentence based on the alleged ineffectiveness of counsel and a claim of sentencing error. The United States has responded in opposition. (Civ. Doc. 6). Petitioner filed a reply (Civ. Doc. 9) and a notice (Civ. Doc. 10).

Pursuant to Rule 7 of the Rules Governing Section 2255 Proceedings in the United States District Courts ("§ 2255 Rule(s)"), the Court ordered that the

---

[1]     Citations to the record in the underlying criminal case, <u>United States vs. Hermenegildo Nevarez Campa</u>, No. 3:15-cr-33-J-32JBT, will be denoted "Crim. Doc. __." Citations to the record in the civil § 2255 case, No. 3:16-cv-1252-J-32JBT, will be denoted "Civ. Doc. __."

1

record be expanded to include additional information about Ground One, in which Petitioner alleges that counsel failed to advise him about his appeal rights. (Civ. Doc. 11). The Court also ordered the United States to file a supplemental response regarding Grounds Two through Five of the § 2255 Motion. (Civ. Doc. 15). The record has since been expanded (Civ. Doc. 12), and the parties have filed supplemental briefs. (Civ. Doc. 14, Petitioner's Response to Expanded Record; Civ. Doc. 16, United States' Supplemental Response).

Under § 2255 Rule 8(a), the Court has determined that an evidentiary hearing is not necessary to decide the motion. See Rosin v. United States, 786 F.3d 873, 877 (11th Cir. 2015) (an evidentiary hearing on a § 2255 motion is not required when the petitioner asserts allegations that are affirmatively contradicted by the record or patently frivolous, or if in assuming that the facts he alleges are true, he still would not be entitled to any relief). For the reasons set forth below, Petitioner's § 2255 Motion is due to be denied.

## I.   Background

On April 16, 2015, a grand jury indicted Petitioner on two counts of child sex trafficking, in violation of 18 U.S.C. § 1591. (Crim. Doc. 14, Indictment). Count One charged Petitioner with sex trafficking of a minor under the age of 14 years, which carried a mandatory minimum sentence of 15 years in prison. 18 U.S.C. § 1591(b)(1). Count Two charged Petitioner with sex trafficking of a minor who was at least 14 years old, which carried a mandatory minimum

sentence of 10 years in prison. Id., § 1591(b)(2).

On December 21, 2015, Petitioner pleaded guilty to Count Two of the indictment pursuant to a written plea agreement. (Crim. Doc. 38, Plea Agreement; see also Crim. Doc. 72, Plea Transcript). Petitioner admitted that he paid A.B., a 15-year-old girl, for sex after he saw her advertisements on Backpage.com. (Crim. Doc. 38 at 21–24). As part of the plea agreement, Petitioner waived the right to appeal his sentence except under four circumstances not relevant here. (Id. at 15–16). In exchange for his guilty plea, the United States agreed (among other things) to dismiss Count One of the indictment and to consider moving for a substantial assistance reduction based on Petitioner's cooperation. (Id. at 3, 4–5). The Magistrate Judge who presided over the plea colloquy reported that "[a]fter cautioning and examining Defendant under oath concerning each of the subjects mentioned in Rule 11, I determined that the guilty plea was knowledgeable and voluntary, and that the offense charged is supported by an independent basis in fact containing each of the essential elements of such offense." (Crim. Doc. 39).[2] The Court accepted Petitioner's guilty plea and adjudicated him accordingly. (Crim. Doc. 41).

---

[2]    Petitioner, who was born in Mexico, had the plea agreement and change-of-plea proceedings translated into Spanish. (Crim. Doc. 72 at 8). In addition, Petitioner stated that he understands "about 80 percent" of English. (Id.).

Petitioner's counsel, Jose Rodriguez, moved five times to continue the sentencing hearing, explaining in four of the motions that Petitioner was cooperating with law enforcement and was being evaluated for a substantial assistance reduction. (Crim. Docs. 44, 47, 58, 61). Counsel also moved for a downward variance under 18 U.S.C. § 3553(a) and a downward departure under U.S.S.G. § 5K2.10. (Crim. Doc. 45).

Ultimately, the government did not move for a substantial assistance reduction, and the sentencing hearing went forward on May 25, 2017. (Crim. Doc. 70, Sentencing Transcript). According to the Presentence Investigation Report (PSR), Petitioner's advisory sentencing guidelines range was 135 to 168 months in prison, based on a total offense level of 33 and a Criminal History Category of I. (Crim. Doc. 52, PSR at ¶ 80). The Court accepted the guidelines calculation but varied 10 months below the guidelines range, sentencing Petitioner to a term of 125 months in prison (five months above the mandatory minimum). (Crim. Doc. 70 at 71; Crim. Doc. 66, Judgment).

Petitioner did not appeal the conviction and sentence. This § 2255 Motion followed.

## II.   Discussion

Under 28 U.S.C. § 2255, a person in federal custody may move to vacate, set aside, or correct his sentence. Section 2255 authorizes a district court to grant relief on four grounds: (1) the sentence was imposed in violation of the

4

Constitution or laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence exceeds the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C § 2255(a). Only jurisdictional claims, constitutional claims, and claims of error that are so fundamental as to cause a complete miscarriage of justice will warrant relief through collateral attack. United States v. Addonizio, 442 U.S. 178, 184-86 (1979); Spencer v. United States, 773 F.3d 1132, 1138 (11th Cir. 2014) (en banc). "[A] collateral attack is the preferred vehicle for an ineffective-assistance claim." United States v. Padgett, 917 F.3d 1312, 1318 (11th Cir. 2019).

To establish ineffective assistance of counsel, a § 2255 petitioner must show both: (1) that his counsel's performance was constitutionally deficient, and (2) that counsel's deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); Martin v. United States, 949 F.3d 662, 667 (11th Cir. 2020). In determining whether counsel was deficient, "[t]he standard for effective assistance of counsel is reasonableness, not perfection." Brewster v. Hetzel, 913 F.3d 1042, 1056 (11th Cir. 2019) (citing Strickland, 466 U.S. at 687). "In the light of the 'strong presumption' that counsel's actions [fell] within the wide range of constitutionally adequate assistance, a movant 'must establish that no competent counsel would have taken the [challenged] action.'" Khan v. United States, 928 F.3d 1264, 1272 (11th Cir.) (quoting Chandler v. United States, 218 F.3d 1305, 1314-15 (11th Cir. 2000) (en banc)), cert.

dismissed, 140 S. Ct. 339 (2019). To demonstrate prejudice, the petitioner must show a reasonable likelihood that the result of the proceeding would have been different but for counsel's error. Martin, 949 F.3d at 667 (citing Padilla v. Kentucky, 559 U.S. 356, 366 (2010)). The Court considers the totality of the evidence in determining whether a petitioner has established deficient performance and prejudice. Strickland, 466 U.S. at 695. However, because both prongs are necessary, "there is no reason for a court… to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

### A. Ground One

Petitioner alleges that trial counsel "never discusse[d] [his] appeal rights in any way." (Civ. Doc. 1 at 4). According to Petitioner, he "was going to appeal [his] case" but his lawyer advised him he was not permitted to do so. Petitioner states that he would like to appeal his conviction and sentence. He believes there were "a lot of errors" in his case and that there were cases worse than his in which the defendant received a lower sentence. Petitioner does not allege in the § 2255 Motion that counsel ignored a direct instruction to file a notice of appeal. Rather, Petitioner alleges a failure to consult.[3]

---

[3]    Petitioner claims for the first time in his Reply brief that counsel ignored a specific instruction to file a notice of appeal. (Civ. Doc. 9 at 1). However, a claim that counsel failed to file a requested notice of appeal is different from a claim that counsel failed to adequately consult the defendant. See Hurtado v. United States, 808 F. App'x

The United States responds that Petitioner's claim lacks merit. It argues that Petitioner's allegation that counsel failed to discuss his appeal rights "in any way" is contradicted by his other allegation that counsel advised him he was not permitted to appeal his sentence, which implies that he and counsel discussed an appeal. (<u>See</u> Civ. Doc. 6 at 7). The United States also argues that Petitioner's claim is refuted by trial counsel's affidavit, which the government attached to its response. (Civ. Doc. 6-1, Affidavit of Jose Rodriguez).

In the affidavit, Mr. Rodriguez states that he recalls "the events that are raised in Mr. Campa's 2255 motion." (<u>Id.</u> at ¶ 1). He avers:

3.  I was retained in this matter on April 22, 2015.

4.  During my representation, I spoke directly to Mr. Campa in Spanish , as I am fluent in Spanish, about his discovery, the evidence presented against him by the Government, the procedure [sic] of the case, sentencing options, mandatory minimums, substantial assistance and appeals. After reviewing his discovery, we discussed his options to go to trial, enter a plea with the benefit of a plea agreement or to plead guilty open to the court.

5. I further entered into negotiations on behalf of Mr. Campa and at his request. Prior to his plea, he maintained he had no desire to cooperate with the Government. The decision by Mr. Campa to cooperate came shortly after the entry of his plea.

---

798, 802 (11th Cir. 2020) ("Inadequate advice regarding the right to appeal is a separate ground upon which a counsel can be found ineffective." (citing <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 479–80 (2000))). New claims raised for the first time in a reply brief are deemed waived. <u>Oliveiri v. United States</u>, 717 F. App'x 966, 967 (11th Cir. 2018) (citations omitted). Moreover, the record refutes this claim, as discussed below.

6. I procured a plea agreement from the Government and explained directly and in Spanish to Mr. Campa each and every term of the plea agreement, the mandatory minimum terms of incarceration applicable and the appellate waiver found in the plea agreement. During that consultation, I discussed with Mr. Campa his right to appeal and also, if he entered into the plea agreement and signed it, he would waive his right to appeal except for the exceptions stated therein.

7. Based on our conversation, the mandatory minimum nature of the sentence on one or both of the charges and considering my initial *estimated* guideline calculations (as I explained that I can only estimate this calculation and, not accounting for the multiple count adjustment adding two levels) which was a range of 108-135 months – Level 31, Mr. Campa accepted the plea agreement. He did so after being explained that the Court would not be able to go under the mandatory minimum of 10 years in this case even though the low end was 108 months. At that point, substantial assistance was not a factor as Mr. Campa did not agree to cooperate until after his plea. He did know and understand at that time the lowest sentence he could receive was the 10 year mandatory minimum but, per the advisory guidelines, it could be higher. Again, he was informed at that time that he was waiving his right to appeal but he did in fact agree to plea, sign the agreement and waive his right to appeal.

8. At the plea hearing, Mr. Campa was further questioned about his plea waiver by this Honorable Court and this Honorable Court explained to Mr. Campa that he was waiving his right to appeal.

9. At sentencing, this Honorable Court sentenced him to 125 months granting a downward variance based on the Defense's *Motion to Vary Sentence Pursuant to 18 U.S.C. § 3553(a) Factors and Downward Departure Pursuant to § 5K2.10 and argument*. Post sentencing, counsel reviewed the sentence with Mr. Campa and explained the time for appeal but that he agreed to an appeal waiver in his plea agreement.

10. Based on that conversation, Mr. Campa advised that he did not wish to appeal his sentence.

8

11. Mr. Campa alleges on p. 5, ¶(b) [Civ. Doc. 1 at 4, ¶(b)] that counsel "never discussed his appeal rights in any way" and again on p. 6, ¶ (70) [Civ. Doc. 1 at 5, ¶(c)(7)] of his 2255 Motion; however, on p. 5 ¶(a), Lines 5-7 [Civ. Doc. 1 at 4, ¶(a)] he contradicts these two allegations by alleging "I was going to appeal my case but my lawyer told me that he (<u>illegible</u>) do not permetd to appeal my conviction or my sentence." He states we did have a discussion about his right to appeal and his appeal waiver.

(Civ. Doc. 6-1 at ¶¶ 3–11) (emphases in original).

Recognizing that contested factual allegations cannot be resolved based on affidavits alone, the Court instructed Mr. Rodriguez to expand the record pursuant to § 2255 Rule 7 and gave Petitioner an opportunity to respond to the materials. (Civ. Doc. 11). Mr. Rodriguez submitted a copy of his calendar for May 31, 2017 (six days after the sentencing hearing), which showed that Mr. Rodriguez had a jail telephone conference with Petitioner. (Civ. Doc. 12-4). Mr. Rodriguez explains that the purpose of the conference was to discuss appeal issues. (Civ. Doc. 12 at 1). Mr. Rodriguez also submitted a copy of the closing letter that he sent Petitioner on the very same day. (Civ. Doc. 12-1 (letter in original Spanish); Civ. Doc. 12-2 (English translation)).

The Court originally instructed Petitioner to respond to the materials by December 16, 2019, which he did not do because, as he explained later, there was a problem with the mail at his prison. (Civ. Doc. 14 at 2). So, on February 18, 2020, the Court enclosed a copy of the materials for Petitioner's review and gave him a second opportunity to respond, which he did. (Civ. Doc. 13; Civ. Doc.

13-1). Petitioner generally states that he "den[ies] all materials submitted by Mr. Rodriguez." (See Civ. Doc. 14 at 2). However, Petitioner mainly raises other concerns, including that he did not receive credit for information he gave to law enforcement, that counsel did not explain the plea agreement, and that his sentence exceeded the sentence that Mr. Rodriguez estimated.[4]

The Supreme Court has "long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (citing Rodriguez v. United States, 395 U.S. 327 (1969)). "[W]hen counsel fails to file a requested appeal, a defendant is entitled to resentencing and to an appeal without showing that his appeal would likely have had merit." Peguero v. United States, 526 U.S. 23, 28 (1999) (citing Rodriguez, 395 U.S. at 329-30). But "[a]t the other end of the spectrum, a defendant who explicitly tells his attorney not to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." Flores-Ortega, 528 U.S. at 477 (emphasis in original) (citing Jones v. Barnes, 463 U.S. 745, 751 (1983)).

"[B]etween those poles" is the situation "when the defendant has not clearly conveyed his wishes one way or the other." Id. In that scenario, the first

---

[4]    To the extent Petitioner raises new claims in response to the expanded record (Civ. Doc. 14), they are not properly before the Court because Petitioner must seek leave under Fed. R. Civ. P. 15 if he wishes to amend the § 2255 motion. Petitioner has not done so. In any event, any new claims would be untimely under § 2255(f).

10

question is whether counsel consulted the defendant about an appeal, and if so, whether counsel followed the defendant's wishes. Id. at 478. The Supreme Court defines the term "consult" to mean "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." Id. If counsel did not consult the defendant, "the court must in turn ask a second, and subsidiary question: whether counsel's failure to consult with the defendant itself constitutes deficient performance." Id. The Supreme Court "reject[ed] a bright-line rule that counsel must always consult with the defendant regarding an appeal." Id. at 480. Instead,

> counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known.

Id. (citing Strickland, 466 U.S. at 690). If counsel performed deficiently by failing to consult the petitioner, the petitioner must further establish prejudice. To do so, he "must show that 'there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed.'" Thompson v. United States, 504 F.3d 1203, 1207 (11th Cir. 2007) (quoting Flores-Ortega, 528 U.S. at 484).

11

As a threshold matter, Petitioner's allegations are insufficient to support vacating the judgment. To be entitled to an evidentiary hearing, let alone habeas relief, a § 2255 movant must allege "reasonably specific, non-conclusory facts that, if true, would entitle him to relief." Aron v. United States, 291 F.3d 708, 715 n.6 (11th Cir. 2002). "However, a district court need not hold a hearing if the allegations are 'patently frivolous,' 'based upon unsupported generalizations,' or 'affirmatively contradicted by the record.'" Winthrop-Redin v. United States, 767 F.3d 1210, 1216 (11th Cir. 2014) (quoting Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989)).

Petitioner does not allege in the § 2255 Motion, and the record does not reflect, that a rational defendant would have wanted to appeal. See Flores-Ortega, 528 U.S. at 480. Petitioner pleaded guilty and waived the right to appeal, which by itself "reduces the scope of potentially appealable issues." Id.[5] Petitioner obtained the benefit of an agreement that allowed him to plead guilty

---

[5]   Petitioner's appeal-waiver contained four exceptions, but none of them applied: (1) his sentence did not exceed the guidelines range as determined by the Court; (2) his sentence did not exceed the statutory maximum; (3) his sentence, which was 10 months below the guidelines range and only five months above the mandatory minimum, did not violate the Eighth Amendment; and (4) the government did not exercise its right to appeal the sentence. (See Crim. Doc. 38 at 15–16). Nor would Petitioner have had a plausible argument that the appeal waiver was not knowing and voluntary. At the change-of-plea colloquy, Petitioner stated under oath that he understood the entire plea agreement, which had been translated for him into Spanish and explained by his attorney. (Crim. Doc. 72 at 8, 22–24, 48–50). The Court, speaking to Petitioner through an interpreter, specifically asked Petitioner about the appeal-waiver, and Petitioner affirmed that he knowingly and voluntarily accepted it. (Id. at 29–31).

only to the charge with the 10-year mandatory minimum sentence (Count Two, sex trafficking of a minor over age 14) in exchange for the government dismissing the charge with the 15-year mandatory minimum (Count One, sex trafficking of a minor under age 14). Petitioner received a sentence that was 10 months below the guidelines range and only five months above the 10-year mandatory minimum (which he acknowledged he was aware of when he pleaded guilty). Thus, no rational defendant would have wanted to file an appeal.

As for whether "this particular defendant reasonably demonstrated to counsel that he was interested in appealing," Flores-Ortega, 528 U.S. at 480, Petitioner's meager allegations are vague. He alleges that he "was going to appeal" his sentence and that he believes there were errors in his case, but he does not describe what he communicated to counsel or when. However, the Court assumes for the sake of argument that Petitioner reasonably expressed an interest in appealing (at the sentencing hearing, Petitioner asked the Court to repeat how much time he had to appeal (Crim. Doc. 70 at 73)). Nevertheless, Petitioner does not elaborate on the content or timing of his discussions with counsel. Therefore, even assuming counsel was required to consult Petitioner, it is impossible to discern whether such consultation was inadequate. See Diaz v. United States, 799 F. App'x 685, 690 (11th Cir. 2020) (affirming district court's denial of a failure-to-consult claim, without an evidentiary hearing, where the petitioner did not present reasonably specific facts).

13

Moreover, even if Petitioner's allegations are sufficient, the affidavits and records on file contradict the claim. Mr. Rodriguez's affidavit shows that Petitioner advised him <u>not</u> to pursue an appeal after he and Petitioner discussed the matter. (<u>See</u> Civ. Doc. 6-1 at ¶¶ 3–11). "Ordinarily, contested factual issues in a § 2255 proceeding may not be determined based <u>only</u> on affidavits." <u>Alvarez-Sanchez v. United States</u>, 350 F. App'x 421, 423 (11th Cir. 2009) (emphasis added). However, "[w]here the affidavits are supported by other evidence in the record the court may rely upon them." <u>Owens v. United States</u>, 551 F.2d 1053, 1054 (5th Cir. 1977).[6] Such is the case here.

In his affidavit, Mr. Rodriguez states that he discussed the appeal waiver with Petitioner while reviewing the plea agreement, and that Petitioner understood and accepted the waiver. (Civ. Doc. 6-1 at ¶¶ 6, 7). During the change-of-plea hearing, the Court specifically asked Petitioner about the appeal waiver and he demonstrated that he knowingly and voluntarily accepted it. (Crim. Doc. 72 at 29–31). At sentencing, the Court advised Petitioner of his right to appeal and Petitioner asked the Court to repeat how much time he had to do so. (Crim. Doc. 70 at 72–73). The Court advised Mr. Rodriguez "to stay with Mr. Campa through the discussion" about an appeal and "[i]f he wishes to file a

---

[6]     Decisions issued by the former Fifth Circuit Court of Appeals before the close of business on September 30, 1981, are binding in the Eleventh Circuit. <u>Bonner v. City of Prichard, Ala.</u>, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

notice of appeal … to do so on a timely basis." (Id. at 73). Mr. Rodriguez affirmed that he was familiar with the consultation process and that he would "absolutely do that." (Id.). According to Mr. Rodriguez's affidavit, "[p]ost sentencing, counsel [1] reviewed the sentence with Mr. Campa and [2] explained the time for appeal but [3] that he agreed to an appeal waiver in his plea agreement." (Civ. Doc. 6-1 at ¶ 9) (bracketed numbers added). "Based on that conversation, Mr. Campa advised that he did not wish to appeal his sentence." (Id. at ¶ 10) (emphasis added).

Other evidence in the record supports Mr. Rodriguez's affidavit. His calendar shows that he had a telephone conference with Petitioner at 3:00 p.m. on May 31, 2017 – six days after the sentencing hearing. (Civ. Doc. 12-4). Mr. Rodriguez explains that this conference was "used to discuss post plea appeal issues." (Civ. Doc. 12 at 1). That very same day, Mr. Rodriguez sent a closing letter to Petitioner. (Civ. Doc. 12-1; Civ. Doc. 12-2). The letter states:

> Dear Mr. Campa,
>
> Thank you for the trust given in allowing our office to represent you in your case. We appreciate the opportunity to represent you and we are ready to serve you again in the future.
>
> If you have any questions, do not hesitate to contact our office.

(Civ. Doc. 12-2 (English translation)).

Although Petitioner generally "den[ies] all materials submitted by Mr. Rodriguez" (Civ. Doc. 14 at 2), he does not offer any specific rebuttal, nor does he point to any evidence that supports his unsubstantiated allegations. Notably, in the closing letter Mr. Rodriguez invited Petitioner to contact his office if Petitioner had any questions. If Petitioner wanted or expected Mr. Rodriguez to file a notice of appeal, it would be reasonable to expect that he would have contacted Mr. Rodriguez after receiving the letter. But Petitioner does not allege, and the record does not indicate, that Petitioner made any effort to follow up with Mr. Rodriguez about an appeal.

The surrounding circumstances also reinforce Mr. Rodriguez's affidavit. First, Petitioner pleaded guilty to Count Two, which "indicate[s] that the defendant s[ought] an end to judicial proceedings." Flores-Ortega, 528 U.S. at 480. Indeed, Mr. Rodriguez "entered into [plea] negotiations on behalf of Mr. Campa and at his request." (Civ. Doc. 6-1 at ¶ 5) (emphasis added). Second, Petitioner knowingly and voluntarily waived the right to appeal his sentence as part of the plea agreement. Although the waiver would not have relieved counsel of the obligation to file a notice of appeal if Petitioner had instructed him to do so, Garza v. Idaho, 139 S. Ct. 738, 746 (2019), the waiver is further evidence that Petitioner decided not to pursue an appeal, Flores-Ortega, 528 U.S. at 480 (instructing courts to consider whether the defendant "waived some or all appeal rights" in deciding whether counsel had a duty to consult). Third,

16

Petitioner received a favorable plea bargain and sentence, to which he did not object at the conclusion of the sentencing hearing (other than to preserve the sentencing arguments already on record). (Crim. Doc. 70 at 74).[7]

Mr. Rodriguez's affidavit establishes that Petitioner advised him not to pursue an appeal following a post-sentencing consultation. Other records on file – including Mr. Rodriguez's calendar and the closing letter – corroborate his affidavit. "[A] defendant who explicitly tells his attorney <u>not</u> to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." <u>Flores-Ortega</u>, 528 U.S. at 477 (emphasis in original) (citation omitted). As such, relief on Ground One is due to be denied, and an evidentiary hearing is not warranted.

## B. Ground Two

Petitioner alleges that counsel gave ineffective assistance by failing to pursue a substantial assistance reduction under Federal Rule of Criminal Procedure 35(b). (Civ. Doc. 1 at 5). Petitioner claims his lawyer told him that he would file a motion to reduce the sentence based on the information Petitioner provided the government. Petitioner complains that he "got stuck with (125) months without any further consideration." (<u>Id.</u>).

---

[7]     The sentence was also within the guidelines range that counsel estimated for Petitioner before he decided to plead guilty. (<u>See</u> Civ. Doc. 6-1 at ¶ 7).

Petitioner cannot establish deficient performance or prejudice. Only "[u]pon the government's motion" can a district court grant a substantial assistance reduction. Fed. R. Crim. P. 35(b)(1), (2). Petitioner acknowledged when he pleaded guilty that the government alone had discretion to decide whether to move for a substantial assistance reduction, and that he could not challenge the government's decision. (Crim. Doc. 38 at 4–5; Crim. Doc. 72 at 27). Thus, Petitioner's counsel could not have filed a Rule 35(b) motion nor could he have compelled the government to do so. See United States v. Rothstein, 939 F.3d 1286, 1291–92 (11th Cir. 2019) (the government has a power, not a duty, to move for a substantial assistance reduction, and its discretion in exercising that power may be reviewed only for an unconstitutional motive) (citations omitted). Counsel cannot be deemed ineffective for not filing a motion he lacked the power to file. See Brewster, 913 F.3d at 1056 ("Defense counsel, of course, need not make meritless motions or lodge futile objections.").

Nor is it true that counsel did nothing to pursue a sentence reduction, whether for substantial assistance or other reasons. Counsel filed five motions to continue the sentencing hearing (each of which were granted), explaining in four of them that Petitioner was working on providing substantial assistance. (Crim. Docs. 44, 47, 58, 61). Counsel advised the Court that "Mr. Campa [was cooperating] and being evaluated for substantial assistance," and that "[t]he defense is moving to continue this case to give Mr. Campa an opportunity to

18

perform substantial assistance." (Crim. Doc. 44 at 1). Counsel also filed a "Motion to Vary Sentence Pursuant to 18 U.S.C. § 3553(a) Factors and for Downward Departure Pursuant to U.S.S.G. § 5K2.10." (Crim. Doc. 45). On top of other arguments for a lower sentence, counsel urged the Court that if the government moved for a downward departure under U.S.S.G. § 5K1.1, it should sentence Petitioner below the 10-year mandatory minimum because 10 years was excessive based on the facts of the case. (Crim. Doc. 45 at 2, 9–11, 12–13). Furthermore, counsel informed the Court at the sentencing hearing that Petitioner had attempted to earn a substantial assistance reduction under U.S.S.G. § 5K1.1, but that "[w]e haven't been able to develop it." (Crim. Doc. 70 at 63). Counsel advised the Court that Petitioner had given statements to the FBI and had attempted to cooperate through family members. (Id.).

In the end, the government did not file a substantial assistance motion, but it was not for lack of effort by counsel. The government explains:

> Campa did not provide any assistance to the government after sentencing. He only provided information prior to sentencing, which was insufficient to qualify as substantial assistance. Prior to his sentencing, Campa, Campa's trial counsel, and the undersigned met with federal law enforcement agents for a proffer with Campa for him to attempt to cooperate and qualify for substantial assistance. Campa was interested in becoming a confidential informant (CI) for a federal law enforcement agency. However, none of the information provided was able to be used by that law enforcement agency and Campa could not be used as a CI due to agency policy prohibiting the agency from working with a person who had been arrested for or convicted of sex crimes involving minors. Therefore, while he attempted to cooperate, as many

defendants do, he was ultimately unsuccessful, and his information did not further any investigations. Campa's attorney later reached out to the undersigned about an arrest he believed was related to Campa's proffer. This was determined to be unrelated to Campa's information, as the arrest was the result of a state law enforcement investigation unrelated to Campa's proffer and not the result of the federal law enforcement agency involved in the proffer with Campa. Thus, his information did not qualify as substantial assistance and there was no basis to pursue a Rule 35 motion.

(Civ. Doc. 16 at 5–6). Petitioner does not contest the government's account.

Counsel did what he could to pursue a substantial assistance reduction on Petitioner's behalf. That counsel ultimately was unsuccessful does not prove that he gave ineffective assistance. See Ward v. Hall, 592 F.3d 1144, 1164 (11th Cir. 2010) ("We have long held that the fact that a particular defense was unsuccessful does not prove ineffective assistance of counsel." (citation omitted)). Petitioner also fails to show a reasonable probability that, even had counsel done more, his cooperation would have qualified as substantial assistance and that the government would have filed such a motion. Therefore, Petitioner has failed to show deficient performance or prejudice. Relief on this ground is due to be denied.

## C. Ground Three

Next, Petitioner alleges that counsel gave ineffective assistance at sentencing by failing to apprise the Court of his efforts to cooperate with the government. (Civ. Doc. 1 at 6). He also claims that, owing to "poor and ineffective legal counsel," the Court did not consider all of the § 3553(a) factors.

20

Citing <u>Rita v. United States</u>, 551 U.S. 338 (2007)[8], and <u>Gall v. United States</u>, 552 U.S. 38 (2007)[9], Petitioner asserts that the Court did not make an "individualized assessment" that accounted for such factors as Petitioner's wife and children and the sentences imposed in similar cases.

The record refutes this claim. As noted above, trial counsel advised the Court of Petitioner's efforts to cooperate with the government. He filed four motions to continue the sentencing hearing, in which counsel notified the Court that Petitioner was attempting to provide substantial assistance. At the sentencing hearing, counsel advised the Court that Petitioner had given statements to the FBI and that his family had tried to cooperate with the government, but they were unable to develop enough of a case for a substantial assistance motion.

Additionally, counsel gave the Court a comprehensive § 3553(a) presentation in which he urged the Court to vary below the guidelines range

---

[8]    In <u>Rita</u>, the Supreme Court held that appeals courts may apply a presumption of reasonableness to a sentence that is within the properly-calculated guidelines range, because "by the time an appeals court is considering a within-Guidelines sentence on review, <u>both</u> the sentencing judge and the Sentencing Commission will have reached the <u>same</u> conclusion as to the proper sentence in the particular case." 551 U.S. at 347 (emphasis in original). However, "the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply." <u>Id.</u> at 351 (citing <u>United States v. Booker</u>, 543 U.S. 220, 259–60 (2005)).

[9]    In <u>Gall</u>, the Supreme Court held that "extraordinary circumstances" are not required to justify a sentence outside the guidelines range, and that the same abuse-of-discretion standard governs an appellate court's review of a sentence regardless of whether the sentence is within or outside the guidelines range. 552 U.S. at 47, 51.

based on Petitioner's history and characteristics and the facts of his case. In the motion for a downward variance or departure, counsel explained how Petitioner grew up in poverty and had a limited education, but came to the United States to work and learned to speak English on the streets. (Crim. Doc. 45 at 4–5, 8–9). Counsel stated that, by working construction jobs, Petitioner both supported his family back in Mexico and provided a stable home for his wife and children in Orlando, one of whom has Down Syndrome. (Id.). Counsel further argued that the facts of the case warranted leniency because the victims presented themselves as adults on Backpage.com and the offense did not involve violence. (Id. at 5–13). Counsel argued that Petitioner's lack of sophistication led him to believe that the victims were in fact adults.

Counsel presented these arguments at the sentencing hearing as well (Crim. Doc. 70 at 51–64), adding that this offense was "out-of-character" given that Petitioner lacked any criminal history (id. at 56). Counsel gathered 18 letters from friends and family members in support of Petitioner, in addition to presenting a statement from his wife. (Crim. Doc. 52 at 16–34; Crim. Doc. 70 at 59–62). The Court remarked that Petitioner had significant family and community support. (Crim. Doc. 70 at 66).

As the Court prepared to announce the sentence, it reviewed the § 3553(a) factors, including Petitioner's history and characteristics, the applicable guidelines and sentencing ranges, as well as the need for the sentence to reflect

just punishment, promote respect for the law, afford adequate deterrence, and protect the public. (Id. at 65–71). Because a 10-year mandatory minimum limited the Court's discretion, and the Court was considering a near-mandatory minimum sentence anyway (see id. at 68), the need to avoid unwarranted sentencing disparities had less relevance. The Court ultimately varied 10 months below the guidelines range, sentencing Petitioner to a term of 125 months in prison (five months above the mandatory minimum).

Thus, the record refutes Petitioner's allegations. Counsel apprised the Court of such factors as Petitioner's family circumstances and his efforts to cooperate with the government. The case resulted in a below-guidelines sentence close to the statutory minimum. Because counsel's performance at sentencing was neither deficient nor prejudicial, relief is due to be denied.

### D. Ground Four

Petitioner alleges that the Court failed to weigh all of the § 3553(a) factors before imposing sentence. (Civ. Doc. 1 at 8). He argues that the Court overlooked "a factor under 18 U.S.C. [§] 3553(a) that may warrant a variance." (Id.). Petitioner suggests that the Court overlooked its ability to disagree with the guidelines range on policy grounds. (Id.).

This claim is procedurally defaulted. A claim that the sentencing court failed to consider the § 3553(a) factors, or that the court treated the guidelines range as mandatory, is a challenge to the procedural reasonableness of the

sentence. <u>See</u> <u>Gall</u>, 552 U.S. at 51. However, a challenge to the sentence's procedural reasonableness is appropriate for direct appeal, not collateral review. "Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding." <u>McKay v. United States</u>, 657 F.3d 1190, 1196 (11th Cir. 2011) (internal quotation marks and citation omitted). Because Petitioner did not challenge the reasonableness of his sentence on appeal, the claim is procedurally defaulted. Petitioner has not demonstrated that he can overcome the default through a showing of cause and prejudice or actual innocence.[10]

In any event, the sentencing record refutes this claim. The Court's explanation of the sentence reflects that it reviewed and considered the § 3553(a) factors. (Crim. Doc. 70 at 65–71). Nor did the Court treat the sentencing guidelines as mandatory, plainly, because it varied 10 months below the guidelines range. Therefore, this ground does not merit relief.

### E. Ground Five

Finally, Petitioner alleges that his lawyer misled him into believing he would receive a lower sentence if he cooperated with the government. (Civ. Doc.

---

[10]     Although Petitioner waived the right to appeal his sentence, "a waiver of appeal provision in a plea agreement d[oes] not constitute 'cause' for failing to take a direct appeal." <u>Garcia-Santos v. United States</u>, 273 F.3d 506, 508 (2d Cir. 2001).

1 at 11). Petitioner complains that he went "through the motions" of interviewing with his lawyer and law enforcement agents, only to learn that he "was disqualified because of [his] enhanced background." (Id.). Presumably, Petitioner is referring to his interest in working as a C.I. for a federal agency, and learning that agency policy prohibited it from working with individuals convicted of a sex crime involving a minor. (See Civ. Doc. 16 at 6). Petitioner states that he provided "a lot of information" to his lawyer and the government, and that his lawyer advised him he would get a sentence lower than 125 months based on the information provided. (Civ. Doc. 1 at 11). Petitioner also complains that the offense of conviction made him ineligible for "safety valve" relief.[11]

Petitioner does not describe when his lawyer advised him that his sentence would be reduced if he assisted the government. Liberally construing the claim, the Court interprets it as asserting that counsel so advised Petitioner before he chose to plead guilty, such that the plea was not knowing and voluntary.[12] Nevertheless, the record refutes this claim.

Petitioner's plea agreement stated that if he cooperated with the government, the government would consider whether to move for a substantial

_____

[11]    The "safety valve" statute, 18 U.S.C. § 3553(f) (2010), provided limited authority for district courts to sentence certain defendants below the mandatory minimum. But that authority extended only to defendants convicted of a controlled substance offense. Petitioner was not charged with a drug offense, so § 3553(f) is not relevant.

[12]    If counsel led Petitioner to believe he would obtain a substantial assistance reduction after he pleaded guilty, it is unclear how Petitioner was prejudiced.

assistance reduction. (Crim. Doc. 38 at 4–5). However, Petitioner acknowledged that the government had sole discretion to decide whether his cooperation qualified as substantial assistance. (Id. at 5). Petitioner agreed that if the government chose not to file a substantial assistance motion, he could not challenge that decision "by appeal, collateral attack, or otherwise." (Id.).

Petitioner further stated at the plea colloquy, under oath, that he understood the entire plea agreement, which had been interpreted for him. (Crim. Doc. 72 at 8, 22–24, 30–31). Petitioner stated that he understood the minimum and maximum penalties, that he understood his sentence could not be predicted, and that his sentence could be harsher than expected. (Id. at 15–16, 18–20). Petitioner affirmed that he was not pleading guilty based on any promises, assurances, or understandings other than those contained in the plea agreement. (Id. at 46-47). Notably, Petitioner specifically affirmed that nobody had promised him a light sentence in exchange for his plea. (Id. at 47). Regarding substantial assistance in particular, Petitioner acknowledged that the decision whether to file a substantial assistance motion rested solely with the government. (Id. at 27). Counsel for Petitioner and the government affirmed as well that no assurances or promises had been made to Petitioner outside of those in the plea agreement. (Id. at 47–48). Petitioner denied that anyone had coached or instructed him to falsely answer the Court's questions. (Id. at 49).

The record reflects that Petitioner pleaded guilty with no expectation he would receive a light sentence or a substantial assistance reduction. "[T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Given that Petitioner's admissions were made under oath, "he bears a heavy burden to show his statements were false." United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988) (per curiam). Petitioner's unsupported allegations do not meet that burden. As such, relief on this claim is due to be denied.

## IV.   Conclusion

Having considered each of Petitioner's claims, and finding that none warrants relief under 28 U.S.C. § 2255, it is hereby **ORDERED:**

1. Petitioner Hermenegildo Nevarez Campa's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1) is **DENIED**.

2. The Clerk shall enter judgment in favor of the United States and against Petitioner, and close the file.

**CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED**

27

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue... only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Petitioner has not made the requisite showing in these circumstances. Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

**DONE AND ORDERED** at Jacksonville, Florida this 15th day of January, 2021.



Timothy J. Corrigan
TIMOTHY J. CORRIGAN
United States District Judge

Lc 19
C:
Counsel of record
Pro se petitioner